IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02594-MEH

MELVIN BERNSTEIN,

    Plaintiff,

v.

AIG CLAIMS, INC., and
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

    Defendants.

_____

**ORDER ON MOTION TO DISMISS**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendants' Motion to Dismiss [filed September 26, 2014; docket #11]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. Also before the Court is Defendants' Unopposed Motion to Stay Pending Ruling on Motion to Dismiss [filed October 17, 2014; docket #15]. For the reasons that follow, the Court **grants** the motion to dismiss and **denies as moot** the motion to stay.

**BACKGROUND**

Plaintiff Melvin Bernstein initiated this action on August 29, 2014 in El Paso County District Court (docket #3), then amended his complaint as a matter of course on September 12, 2014 (docket #4). On September 18, 2014, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(b) governing diversity jurisdiction. (Docket #1.)

**I.    Facts**

The following are factual allegations made by Plaintiff in his Amended Complaint, which

are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In late May or early June 2012, but no later than June 9, 2012, National Union issued a Blanket Accident Insurance policy to Discovery Talent ("Discovery") and Anthropic Productions ("Anthropic"), under policy number GTP 0009126256-208 ("Policy"). The Policy was issued in connection with Discovery's production of a reality-television pilot at the shooting range and military museum owned by Plaintiff Melvin Bernstein and his late wife, Terry Flanell-Bernstein in Colorado Springs, Colorado ("the Production").

The Policy provided for a $1 million benefit to be paid to any eligible cast or crew member accidentally killed during the Production. Terry Flanell-Bernstein and Plaintiff Melvin Bernstein were among the cast members eligible for the accidental-death benefit under the Policy.

On or about June 14, 2012, Terry Flanell-Bernstein was accidentally killed during the Production. Upon the death of Terry Flanell-Bernstein, Plaintiff, as her surviving spouse, became eligible for the $1 million accidental-death benefit under the Policy.

By June 25, 2012, AIG and National Union had received notice from Discovery and/or Anthropic that Terry Flanell-Bernstein had been accidentally killed during the Production; AIG and National Union knew or reasonably should have known that Plaintiff was the surviving spouse of Terry Flanell-Bernstein and was the primary beneficiary of the $1 million accidental-death benefit under the Policy; and AIG and National Union knew how to contact Plaintiff, or readily could have learned how to contact him.

On November 3, 2012, Plaintiff's attorney sent a letter of representation to Discovery and Anthropic in connection with the death of Terry Flanell-Bernstein. At some point after November

3, 2012, Discovery and/or Anthropic brought the letter of representation to AIG's attention, and on May 7, 2013, AIG sent a letter to Plaintiff's attorney informing him of the existence of the Policy. In May 2014, National Union paid to Plaintiff Melvin Bernstein the $1 million accidental-death benefit under the Policy.

From June 25, 2012 until May 7, 2013, neither AIG nor National Union had any reason to believe that Plaintiff was aware of the existence of the Policy, nor made any attempt to notify Plaintiff about the existence of the Policy.

## II.     Procedural History

Based upon these allegations, Plaintiff brings claims against Defendants for violations of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. After removal of the action to this Court, Defendants filed the present motion to dismiss the Amended Complaint arguing that the statutes are not applicable to the facts as stated. Specifically, Defendants claim that, since Plaintiff alleges he was unaware of the Policy between June 25, 2012 and May 7, 2013 and, thus, could not have filed any benefits claim during that time, he cannot now state a legal claim for unreasonable delay of a "claim for payment of benefits" as required by the statutes. Motion, docket #11 at 3.

Plaintiff counters that his is an issue of first impression: "whether an action for unreasonable delay can be brought under C.R.S. 10-3-1115 and 10-3-1116 ('the Statutes') for misconduct that occurs before a formal claim has been initiated." Response, docket #12 at 2. Plaintiff argues that "there is no language in the Statutes requiring that the unreasonable delay take place after a formal claim has been submitted to the first-party insurer, and there is no basis for the Court in the present case to read such a requirement into the Statutes." *Id.* Plaintiff contends that, like a bad-faith common law claim, a claim under the Statutes should "encompass any unreasonable conduct of the

Defendants causing a delay in the eventual payment of Plaintiff's first-party insurance benefits." *Id.* at 3.

Defendants reply first that Plaintiff cites an incorrect (outdated) standard of review and, second, the plain language of the statute requires that an unreasonable delay take place after a claim for benefits has been submitted. Rather than reading any requirement into the statutes, Defendants assert that Plaintiff's interpretation would require the Court to "read out" of the statute the articulated term, "claim for benefits." Reply, docket #14 at 3. Defendants conclude that Plaintiff does not dispute he is alleging delay only during the period prior to submitting a claim and thus, in accordance with the plain language of the statutes, Plaintiff does not state a claim for relief.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

The sole issue in this case requires the Court to interpret Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. The first step in statutory interpretation "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case ... [t]he inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and

consistent." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (citations and internal quotation marks omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1137 (10th Cir. 2011) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).

"When federal courts are called upon to interpret state law, they must look to rulings of the highest state court, and if no such rulings exist, they must endeavor to predict how the high court would rule." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). In sum, he Court must "interpret state laws according to state rules of statutory construction, and therefore interpret [a] statute based on its plain language." *Ward v. Utah*, 398 F.3d 1239, 1248 (10th Cir. 2005).

Colorado courts "give effect to the intent of the legislature" when interpreting statutes. *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 799 (Colo. 2000). "We look to the language of the statute, giving words their plain and ordinary meaning ... [i]f the plain language of the statute demonstrates a clear legislative intent, we look no further in conducting our analysis." *Id.*

Colo. Rev. Stat. § 10-3-1115(1) provides, in pertinent part,

(a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

(b) For the purposes of this section and section 10-3-1116:

(I) "First-party claimant" means an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy. "First-party claimant" includes a public entity that has paid a claim for benefits due to an insurer's unreasonable delay or denial of the claim.

In addition, Colo. Rev. Stat. § 10-3-1116(1) provides,

> A first-party claimant as defined in section 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit.

Plaintiff alleges that he is a "'first party claimant,' as that term is defined in Section 10-3-1115, C.R.S. (2012)." Amended Complaint, ¶ 18, docket #4. However, Plaintiff's allegation is actually a legal conclusion rather than a factual allegation and, thus, the Court need not take it as true for purposes of this Rule 12(b)(6) analysis.

Accordingly, the Court finds that the plain language of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 is unambiguous and does not apply to Plaintiff's facts and, thus, Plaintiff fails to state claims for relief in this case. First, it is undisputed that Plaintiff alleges Defendants unreasonably delayed payment of the accidental death benefit during the period from June 25, 2012 to May 7, 2013; however, it is also undisputed that during the same period, Plaintiff was not " an individual ... *asserting an entitlement to benefits* owed directly to or on behalf of an insured under an insurance policy." Colo. Rev. Stat. § 10-3-1115(1)(b)(I) (emphasis added). According to Merriam-Webster, to "assert" is "to state or declare positively and often forcefully or aggressively" or "to demonstrate the existence of" something; thus, to "assert" clearly involves an affirmative act. Here, Plaintiff concedes that he was unaware of the existence of the subject Policy during that time period and, consequently, could not have asserted any entitlement to the Policy's benefits then. Amended Complaint, ¶ 16. Thus, Plaintiff was not a "first party claimant" entitled to protection under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.

Likewise, both statutes clearly and unambiguously prohibit the unreasonable delay or denial of a "claim for benefits." In this case, no party disputes that the Plaintiff *never* made a claim for benefits under the subject Policy. Rather, the allegations reflect that, at some point after November

2012, Defendants became aware that Plaintiff's wife had been accidentally killed and they sent a letter to Plaintiff's counsel on May 3, 2013 notifying Plaintiff of the existence of the Policy and his entitlement to its benefit. Although Plaintiff does not allege that he made a claim for the benefit after this point, Plaintiff received the benefit approximately one year later; Plaintiff alleges no legal claim that his receipt of the benefit after May 2013 was unreasonably delayed.

The statutes' requirement that a plaintiff demonstrate an unreasonable delay or denial of a "claim for benefits" is clear. However, Plaintiff contends that the Court should construe the statutes as similar to a common law claim for bad faith breach of insurance contract, which "encompasses the entire course of conduct and all dealings between the insurer and the insured." Response, docket #12 at 2. Plaintiff's contention is improper for two reasons (as stated by Defendants): (1) Colorado courts have found that the statutes are meant to (and do) differ from the common law bad faith claim in significant ways; and (2) Plaintiff fails to cite any legal support demonstrating that the "entire course of conduct" in a bad faith context includes an insurer's conduct before the submission of a claim for benefits.

First, in *Kisselman v. American Family Mut. Ins. Co.*, 292 P.3d 964 (Colo. App. 2011), the Colorado Court of Appeals specifically rejected a premise reached by the trial court that claims brought under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 and common law claims for bad faith are the same. "Instead, the Statutes create a new private right of action for insureds in addition to and different from a common law bad faith claim. And the insured's burden of proving that statutory claim is less onerous than that required to prove a claim under the common law for breach of the

duty of good faith and fair dealing." *Id.* at 975.[1] This "less onerous" burden is described as follows:

> While first-party bad faith principles require a plaintiff to establish that the insurer knew or recklessly disregarded the fact that its conduct was unreasonable, the statutory claim requires only that a first-party claim be denied without a reasonable basis. Thus, the standard contained in § 1115 arguably is less onerous on the insured, and the remedies contained in § 1116 are more financially threatening to the insurer than a traditional common law bad faith claim.

*Vaccaro v. American Family Ins. Group*, 275 P.3d 750, 756 (Colo. App. 2012) (citations and internal quotations omitted). As demonstrated by *Vaccaro* and *Kisselman*, Colorado's General Assembly intended for the burden to prove claims brought pursuant to the 2008 statutes to be different than that to prove claims brought under the common law. *See also Riccatone v. Colorado Choice Health Plans*, 315 P.3d 203, 210 (Colo. App. 2013) (citing House Speaker Romanoff's explanation of the difference between the statutory and common law claims, describing the common law standard as "too high" and clarifying that "the purpose of the bill was to create a less onerous standard in the first-party context."). Accordingly, considering the statutes' "less onerous" burden requirement, the Court finds it improper to construe the statutes as encompassing a broader scope of illegal conduct than that specifically articulated in Colo. Rev. Stat. § 10-3-1115 itself.[2]

Second, none of the cases cited by Plaintiff demonstrate that "the entire course of conduct and all dealings between the insurer and the insured" in the bad faith context include conduct that has taken place before or without the submission of a claim for benefits. *See Dale v. Guar. Nat'l*

---

[1]Notably, although the issue before the *Kisselman* court was to determine whether the statutes provided prospective (as opposed to retrospective) relief, the court interpreted the statutes as follows: "after the Statutes' effective date of August 5, 2008, insurers are statutorily prohibited from engaging in certain conduct – namely, acts of unreasonable delay or denial of payment of benefits, as defined in the statute – ***stemming from a claim for benefits***." *Id.* (emphasis added).

[2]And, in light of the consistency among *Kisselman*, *Vaccaro*, and *Riccatone*, this Court is persuaded that the Colorado Supreme Court would likely rule the same. *See Lovell*, 466 F.3d at 899.

*Ins. Co.*, 948 P.2d 545, 552 (Colo. 1997) (noting that evidence of bad faith conduct both before and after the filing of a complaint would be admissible to show a pattern of bad faith); *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008) (in a third-party bad faith case, the court found that bad faith encompasses conduct occurring before, during and after trial); *Vaccaro*, 275 P.3d at 753-54 (addressing a first-party bad faith claim in which the alleged conduct occurred after the plaintiff submitted a claim for benefits in 2007).  Without such demonstration, the Court is unwilling to agree that the statutes should be construed as encompassing conduct by an insurer before or without the submission of a claim for benefits.

Therefore, the Court finds that the claims espoused in Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 do not apply to the Plaintiff's allegations of the Defendants' conduct without Plaintiff's assertion or submission of a claim for benefits.

## CONCLUSION

The Court concludes the Plaintiff fails to state cognizable claims for relief in this case under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss [filed September 26, 2014; docket #11] as set forth herein.  Defendants' Unopposed Motion to Stay Pending Ruling on Motion to Dismiss [filed October 17, 2014; docket #15] is **denied as moot**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and to close this case.

DATED this 22nd day of October, 2014, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge